NOT DESIGNATED FOR PUBLICATION

No. 129,015

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

HENRY D. MCKNIGHT JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; JASON E. GEIER, judge. Submitted without oral argument. Opinion filed July 17, 2026. Appeal dismissed.

*Emily Brandt*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, deputy district attorney, *Michael F. Kagay*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., ISHERWOOD and HURST, JJ.

WARNER, C.J.: Henry McKnight Jr. appeals the district court's order revoking his probation, claiming the court relied on inadmissible hearsay evidence to conclude that he had violated the terms of his probation by committing a new crime. But while the parties were briefing the issues in this appeal, McKnight was released from prison and is now serving his postrelease-supervision term. Because the incarceration portion of McKnight's sentence is now complete, this court no longer has the ability to reinstate his probation in lieu of that sentence. We thus dismiss McKnight's appeal as moot.

1

FACTUAL AND PROCEDURAL BACKGROUND

In January 2023, McKnight pleaded guilty to aggravated assault. At sentencing a month later, the parties jointly recommended a dispositional departure. The district court granted the parties' request and placed McKnight on probation for a period of 24 months with an underlying sentence of 29 months' imprisonment and 12 months' postrelease supervision.

In February 2025, about 23 months into McKnight's 24-month probation term, McKnight and a woman (D.M.) got into a heated disagreement while drinking alcohol at D.M.'s residence, causing D.M. to contact the police department. McKnight threatened to harm D.M., so she pushed McKnight until he exited through the back door of the house. She then heard "[p]robably two" "bangs" in the backyard, but she did not verify the source of the noise. D.M. neither observed a weapon nor had any knowledge of whether McKnight owned a firearm.

After being dispatched to D.M.'s house, an officer located him nearby and arrested him. The following day, a detective searched the area and located a black revolver. The detective later testified that it was his opinion that the revolver had been recently discarded as it lacked any signs of rust.

The State moved to revoke McKnight's probation, accusing him of violating his probation by committing several crimes relating to the incident with D.M. The district court issued an order for McKnight to show cause why his probation should not be revoked. The preliminary hearing on the alleged new crimes also served as the evidentiary hearing on the probation violations.

At the hearing, a family friend (L.J.) testified that he was present the night of the altercation but had been alone in a different room. He stated he could not remember

2

details of the evening as he had also been drinking. L.J. said he did not know whether McKnight owned a firearm.

Officer David Ibarra testified that he spoke with D.M. and L.J. the night of the incident. According to Officer Ibarra, L.J. had stated that he heard both the argument and multiple gun shots. The officer stated that L.J. also conveyed that he had been looking out the window and saw McKnight fire the gun into the air before leaving the premises on a scooter. The officer added that L.J. told him that McKnight had a black revolver. When asked whether D.M. or L.J. appeared intoxicated that evening, the officer replied that both could communicate clearly.

The district court found that the State had shown by a preponderance of the evidence that McKnight had discharged a firearm within the city limits. The district court revoked McKnight's probation but found it should give him "some credit for remaining compliant on probation" for almost two years. The court thus modified the duration of McKnight's sentence to 12 months rather than the original 29-month term.

McKnight appealed. In January 2026, in the midst of appellate briefing, the State submitted a notice of change of custody stating that McKnight had completed his prison sentence in October 2025 and was now on postrelease supervision.

DISCUSSION

McKnight challenges the evidentiary basis for the district court's finding that he had committed a new crime while on probation, claiming the court relied on hearsay (Officer Ibarra's description of what L.J. had told him the night of the incident). But see *State v. Sears*, No. 86,426, 2002 WL 35657292, at *2-3 (Kan. App.) (unpublished opinion) (rejecting a similar claim when the declarant was available to testify as a witness and did in fact testify at the hearing), *rev. denied* 274 Kan. 1117 (2002). Yet as we have

indicated, we do not reach the merits of this argument, as this court no longer can provide McKnight with the remedy he seeks.

Unlike the legislative and executive branches, Kansas courts do not have the constitutional authority to issue advisory opinions. *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 898, 179 P.3d 366 (2008). Instead, courts are called on to decide concrete questions that will have an actual impact on the parties before us—to "'determine real controversies relative to the legal rights of persons and properties which are actually involved in the particular case properly brought before it and to adjudicate those rights in such manner that the determination will be operative, final, and conclusive.'" *State v. Roat*, 311 Kan. 581, 590, 466 P.3d 439 (2020) (quoting *State v. Hilton*, 295 Kan. 845, 849, 286 P.3d 871 [2012]).

As a corollary to this principle, even if a court case began with an active dispute, courts will generally not continue to hear the case if the issues presented become "moot." *Roat*, 311 Kan. at 584. A case is moot when it is clearly and convincingly shown that the actual controversy has ended, that a judicial decision would have no practical legal effect for any purpose, and that it would have no impact on the parties' rights. 311 Kan. at 584. The party asserting that issues in a case have become moot must make a prima-facie showing that the actual controversy in the case has ended. See 311 Kan. 581, Syl. ¶ 6. The burden then shifts to the party bringing the claim, who must "show the existence of a substantial interest that would be impaired by dismissal" or convince this court that "an exception to the mootness doctrine applies." 311 Kan. 581, Syl. ¶ 7.

The State contends that McKnight's appeal is moot because the relief he seeks—being placed on probation—is no longer available since he has completed the incarceration portion of his sentence. McKnight replies that he is serving a 12-month term of postrelease supervision. He argues that, but for the probation revocation, "he would not have lost his liberty—he would not have been ordered to serve a prison

4

sentence—and he would not be currently serving a postrelease sentence." In short, McKnight claims a reversal of his probation revocation could free him from postrelease supervision (though he cites no legal authority for that proposition).

The Kansas Supreme Court rejected an argument similar to the one McKnight raises here—albeit with the parties' positions inverted—in *State v. Kinder*, 307 Kan. 237, 238, 408 P.3d 114 (2018). In that case, the defendant was held in custody for 360 days while his case was pending disposition. At sentencing, the State requested that Kinder be sentenced to 9 months' imprisonment with 18 months' probation. The defendant requested an 8-month sentence and argued that this sentence would be complete, given Kinder's jail time while the case was pending. The district court sentenced Kinder to 9 months' imprisonment but suspended this sentence and ordered him to serve 18 months' probation; at the same time, the court ordered that Kinder would receive credit for the 360 days he spent incarcerated while the case was pending (meaning his 9-month underlying sentence was effectively complete).

Kinder appealed, arguing that the court could not place him on probation when his underlying prison sentence was already finished. The State countered that the appellate courts lacked jurisdiction over the case, as Kinder received a presumptive sentence, and argued in the alternative that the case should be remanded to the district court to impose a postrelease-supervision term.

The Kansas Supreme Court agreed that Kinder's prison sentence was complete, given the credit for the time Kinder had spent in jail while his case was pending—that is, his "full term of incarceration has been served." 307 Kan. at 240. The court then reviewed the provisions of the Kansas statutes that govern probation and concluded that "neither 'probation' nor 'parole' as defined by the [Kansas Sentencing Guidelines Act, or KSGA] would allow for imposition in Kinder's situation, i.e., when his sentence of confinement has already been completed." 307 Kan. at 242. The court also noted its previous caselaw,

5

indicating that probation is a "'*disposition[] alternate to the serving of a sentence*.'" 307 Kan. at 242 (quoting *State v. Carr*, 274 Kan. 442, Syl. ¶ 3, 53 P.3d 843 [2002]).

Having reviewed the relevant statutes and governing caselaw, the *Kinder* court concluded that "because Kinder's sentence of confinement already has been served, there can be no sentence to be suspended. And if there is no sentence, it obviously cannot be exchanged for probation." 307 Kan. at 243. In other words, once Kinder's sentence was complete, courts no longer had the statutory ability to place him on probation. See 307 Kan. at 243. The court also found that the State's alternative argument regarding postrelease supervision was moot, as Kinder's case had been complete for longer than 12 months by the time the Kansas Supreme Court issued its decision, and was thus well past the expiration of a 12-month supervision term. 307 Kan. at 244.

Although the parties in this case are on opposite sides of the arguments presented in *Kinder*, the Kansas Supreme Court's holding there controls our analysis. McKnight challenges only the revocation of his probation, arguing that the district court relied on insufficient evidence to conclude he violated his probation conditions. But *Kinder* held that "probation cannot be imposed after the full sentence of confinement has been served." 307 Kan. at 238. Under this reasoning, we cannot place McKnight back on probation once he has served his sentence.

McKnight's brief does not address—or even mention—the Kansas Supreme Court's decision in *Kinder*. Instead, he relies on logic: He asserts that he was almost finished with his probation term when the district court found he had committed a new crime. And he argues that if the evidence was insufficient to revoke his probation, he should be finished with his probation term and should not be required to serve the remainder of his postrelease-supervision term. This argument is unpersuasive for at least two reasons.

6

*First*, although McKnight frames his argument as a question of the sufficiency of the evidence, it is actually an unpreserved evidentiary challenge to Officer Ibarra's testimony regarding L.J.'s previous statements, as McKnight did not object to any of the officer's statements. See K.S.A. 60-404 (requiring a timely and specific objection to the admission of evidence before its admission may be challenged on appeal); *State v. King*, 288 Kan. 333, Syl. ¶ 5, 204 P.3d 585 (2009) (holding that "evidentiary claims . . . must be preserved by way of a contemporaneous objection before those claims may be reviewed on appeal").

*Second*, we are duty-bound to follow Supreme Court precedent, absent some indication of a departure. *State v. Patton*, 315 Kan. 1, 16, 503 P.3d 1022 (2022). And *Kinder* states that "[o]nce a sentence of confinement has been completed, a defendant cannot be sentenced to 'probation' as defined by the KSGA." 307 Kan. 237, Syl. ¶ 4.

We also note that McKnight has not demonstrated that any of the prudential exceptions that might justify consideration of an otherwise moot question apply here. Accord *Roat*, 311 Kan. 581, Syl. ¶ 7. Indeed, even apart from the insurmountable preservation issue that McKnight faces, he acknowledges that L.J. was present (indeed, testified) at the hearing and was available for cross-examination. See K.S.A. 60-460(a). McKnight argues that even though L.J.'s statements were admissible under this standard, they also needed to be *reliable*. But the caselaw McKnight cites largely turns on a view of the Confrontation Clause that has been abrogated for more than two decades by *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

In sum, McKnight's case is moot because this court cannot offer him any meaningful relief. And McKnight has not demonstrated any prudential exception to the mootness doctrine that would otherwise alter our review. We thus dismiss the appeal.

Appeal dismissed.

\* \* \*

HURST, J., dissenting: I dissent from the majority's conclusion that the appeal is moot and would decide the merits of the issue.